THE WESTERN FURNITURE & MANUFACTURING COMPANY V. MAX BLOOM.

No. 15,090.   (90 Pac. 821.)

SYLLABUS BY THE COURT.

MASTER AND SERVANT—*Action under Factory Act—Assumption of Risk Not a Defense.* In an action brought by an employee against his employer to recover damages for injuries received on account of the failure of the latter to comply with the provisions of the "factory act" (Laws 1903, ch. 356), requiring manufacturers safely to guard their machinery for the purpose of protecting their employees, assumption of risk is not available as a defense.

Error from Sedgwick district court; THOMAS C. WILSON, judge. Opinion filed June 8, 1907. Affirmed.

*E. G. Anderson,* and *Stanley, Vermilion & Evans,* for plaintiff in error.

*I. P. Campbell, J. Graham Campbell,* and *Ray Campbell,* for defendant in error.

The opinion of the court was delivered by

MASON, J.: The Western Furniture & Manufacturing Company prosecutes error from a judgment against it obtained by Max Bloom on account of injuries received while in its employ by reason of its failure to comply with the statute requiring manufacturers safely to guard their machinery for the purpose of protecting their employees. (Laws 1903, ch. 356, § 4.)

Complaint is made that although the plaintiff during the examination of jurors as to their competency was permitted to ask certain questions regarding their relation to an insurance company, the defendant was denied the right to ask similar questions as to their connection with a law firm. The limitation of such inquiries is necessarily committed to the sound discretion of the trial court (*Swift v. Platte,* 68 Kan. 10, 72 Pac. 271, 74 Pac. 635), and there is nothing in the record that suggests an abuse of discretion in the present instance.

Complaint is also made of the refusal to give several special instructions asked relating to contributory negligence. While the charge as given was somewhat general, we think it sufficiently covered this subject and therefore that no error is shown in that connection.

The important question presented arises upon the refusal of the court to submit to the jury any issue with respect to the assumption by the plaintiff of the risk of injury arising from the defendant's failure to observe the statute. Whether the defense of assumption of risk is ever open in an action founded upon statutes of the kind here relied upon, commonly known as "factory

acts," or upon any statute giving a right of action to an employee on account of injuries resulting from the negligence of his employer, is a question upon which there is great difference of judicial opinion. It has not heretofore been passed upon by this court. In *Creamery Co. v. Daniels,* 72 Kan. 418, 83 Pac. 986, the negligence for which a recovery was sought was within the terms of the statute, but the case was submitted to the jury under an instruction embodying the ordinary rule as to assumed risk. The plaintiff, having recovered judgment, did not attack the instruction. As the defendant also accepted it, it became the law of the case. The effect of the statute on this defense was therefore not involved in the proceeding in this court, and was not argued or suggested. In *Madison v. Clippinger,* 74 Kan. 700, 88 Pac. 260, the question was argued, but as its decision could not affect the disposition of the case it was not passed upon. In sections 116 and 117 of Dresser's Employers' Liability, in the course of a full discussion, the opinion is expressed that the servant may under some circumstances be held to have assumed the risk occasioned by the breach of an obligation imposed upon the master by statute. This view is approved in sections 205 and 235 of White's Personal Injuries in Mines, but upon somewhat different grounds. In section 229 of Reno's Employers' Liability Acts, section 650 of volume 2 of Labatt's Master and Servant and sections 4702 and 4704 of volume 4 of Thompson's Commentaries on the Law of Negligence the conflict is noted, and the authors, without avowing any strong convictions of their own, indicate that the rule generally adopted is that the statutes do not abolish the defense.

A collection of cases bearing upon the matter is to be found in volume 20 of the American and English Encyclopædia of Law, at page 121, and volume 3 of the Supplement to the American and English Encyclopædia of Law, at pages 1304 and 1305, which can

9—76 KAN.

be made practically complete by the addition of *Narramore v. Cleveland, C., C. & St. L. Ry. Co.,* 96 Fed. 298, 37 C. C. A. 499, 48 L. R. A. 68, the leading case in favor of the view that the defense is not available, and *Birmingham Railway & Electric Co. v. Allen,* 99 Ala. 359, 13 South. 8, 20 L. R. A. 457, and *Denver & R. G. R. Co. v. Norgate,* 141 Fed. 247, 72 C. C. A. 365, 6 L. R. A., n. s., 981, 5 A. & E. Ann. Cases, 448, holding the contrary. In a note to the last-named case in 6 L. R. A., n. s., 981, the authorities are classified and reviewed in detail, and the result is thus summarized:

"The jurisdictions are well-nigh equally divided on this question. Of the effect of the statute imposing duties on a master to abolish by implication the defense of assumption of risk, Alabama, Iowa, Massachusetts, Minnesota, New York, Ohio, Rhode Island, and Wisconsin hold that such statutes do not abolish that defense.

"On the other side, holding that the defense of assumption of risk is abolished in such cases by implication, are the courts of Illinois, Indiana, Louisiana, Michigan, Missouri, Vermont, and Washington." (Page 988.)

Where the defense is held to be unavailable it is usually upon the grounds stated with great force by Judge Taft in *Narramore v. Cleveland, C., C. & St. L. Ry. Co.,* 96 Fed. 298, 37 C. C. A. 499, 48 L. R. A. 68: First, that assumption of risk is essentially a contract by the employee to waive the benefit of the statute; and, second, that considerations of public policy will not permit such a contract to be given effect. If both of these propositions are sound the conclusion reached obviously follows. Therefore, where the defense is permitted, one or the other of them is denied—sometimes both, as in *O'Maley v. South Boston Gas Light Co.,* 158 Mass. 135, 32 N. E. 1119, 47 L. R. A. 161, the leading American case upon that side of the controversy, where it is maintained that assumption of risk is not strictly speaking a contract, but that if it is so regarded it is one which the employee is competent to make. The

essential character of assumption of risk, and its connection with considerations of public policy and with the maxim *volenti non fit injuria*, are discussed in a note to that case in 47 L. R. A. 161, and in sections 82, 88, 116 and 117 of Dresser's Employers' Liability, as well as in many of the cases cited in the notes referred to. It is unnecessary to enter upon a consideration of the matter at this time, for this court has already committed itself to the view, with which it is entirely satisfied, that as applied to the relation of master and servant the term is one of contract.

"The doctrine of 'assumption of risk' rests for its support upon an agreement of the employee with his employer, express, or implied from the circumstances of his employment, that his employer shall not be liable to him in damages for any injury incident to the service he is employed to perform, resulting from a known or obvious danger arising in the performance of the service." (*Railway Co. v. Bancord,* 66 Kan. 81, 71 Pac. 253, syllabus.)

"Reduced to its last analysis, the doctrine of assumed risk must rest for its support upon the express or implied agreement of the employee that, knowing the danger to which he is exposed, he agrees to assume all responsibility for resulting injury." (*Id.,* p. 88, opinion.)

It is also unnecessary at this time to enter upon an independent examination of the second of the two subsidiary questions upon which the solution of the problem presented depends. Upon that, also, this court is definitely and finally committed. In *K. P. Rly. Co. v. Peavey,* 29 Kan. 169, 44 Am. Rep. 630, where the statute making a railway company liable to its employees for injuries resulting from the negligence of any of its agents or servants (Gen. Stat. 1901, § 5858) was under consideration, it was said:

"If the statute was enacted for the better protection of the life and limb of railroad employees, it would be against public policy for the courts to sanction contracts made in advance for the release of this liability, especially when we consider the unequal situation of

the laborer and his employer. Take this illustration: In some states—and in our own—the owners of coal-mines which are worked by means of shafts are required to make and construct escapement-shafts in each mine, for distinct means of ingress and egress for all persons employed or permitted to work in the mines. Such a statute is for the benefit of employees engaged in working in coal-mines; but the owner of such a mine would not be permitted to contract in advance with employees for operation of the mine in contravention of the provisions of the statute. The state has such an interest in the lives and limbs of its citizens that it has the power to enact statutes for their protection, and the provisions of such statutes are not to be evaded or waived by contracts in contravention therewith. The general principle deduced from the authorities is, that an individual shall not be assisted by the law in enforcing a contract founded upon a breach or violation on his part of its principles or enactments; and this principle is applicable to legislative enactments, and is uniformly true in regard to all statutes made to carry out measures of general policy; and the rule holds equally good, if there be no express provision in the statute peremptorily declaring all contracts in violation of its provisions void, in regard to statutes intended generally to protect the public interests, or to vindicate public morals." (Page 176.)

It is not important whether the result there reached might have been justified upon other grounds. The broad principle announced—that a workman employed in a dangerous occupation may not by agreement waive the provisions of an act intended for his protection or relieve his employer from a statutory liability in that connection—has become a settled tenet of this court. This fact was recognized in a subsequent hearing in the same case by the justice whose individual opinion led him to a contrary view (*K. P. Rly. Co. v. Peavey*, 34 Kan. 472, 479, 8 Pac. 780); and the doctrine was again declared and applied in the recent case of *Railway Co. v. Fronk*, 74 Kan. 519, 87 Pac. 698, which arose upon the same statute, in these words:

"The state has an interest in the lives, health and safety of its citizens, and whenever a business, al-

though lawful in itself, is dangerous to the lives or injurious to the health of the employees engaged in conducting such business it becomes a question of public concern and the state may intervene in the interest of the public welfare. We have many such statutes enacted in the interest and for the protection of different classes of citizens. The owner or lessee of coal-mines worked by means of shafts is required to maintain escapement- and ventilating-shafts in accordance with certain prescribed rules, and no person is permitted to take more than five pounds of powder in any such mine at one time. The protection thus provided by the state for the safety of its citizens is a matter of public concern and cannot be contracted away by the individual. . . . For the reasons suggested, a contract by one entering the service of a railroad company waiving his right of action for damages which he may receive in consequence of the negligence of its agents, servants or employees is void." (Pages 526, 527.)

It is clear, therefore, that unless the court recedes from its position that assumption of risk is one of the terms of the contract of employment, or from its position that the protection vouchsafed to employees by statute against the negligence of their employers cannot be contracted away, it must hold that assumption of risk is not available as a defense to an action founded upon the factory act. These positions are adhered to, and it results that the judgment must be affirmed.